# UNITED STATES DISTRICT COURT
## IN THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Movant, <br> v. <br><br> MATCH GROUP, INC., <br><br> Respondent. | Case No. 21-mc-80184-YGR (TSH) <br><br> **JOINT DISCOVERY LETTER BRIEF REGARDING APPLE INC.'S RULE 54(B) MOTION TO VACATE OR REVISE DISCOVERY ORDER NO. 1.** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Apple Inc. ("Apple") and Match Group, Inc. ("Match") respectfully submit this joint letter brief regarding Apple's Rule 54(b) Motion to Vacate or Revise Discovery Order No. 1 in this miscellaneous action.

Counsel for Apple and Match (together, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach an agreement and therefore submit this joint letter pursuant to Judge Hixson's standing order and Local Rule 37.

Respectfully submitted,

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP | HUESTON HENNIGAN LLP |
| By:   */s/ Jay P. Srinivasan* <br>     Jay P. Srinivasan <br>     *Attorney for Defendant Apple Inc.* | By:   */s/ Douglas J. Dixon* <br>     Douglas J. Dixon <br>     *Attorney for Match Group, Inc.* |

I.      **Apple's Position:**

Apple moves under Rule 54(b) for vacatur of this Court's August 19, 2021 Discovery Order (Dkt. 36) on the ground that Apple's subsequent settlement with the Developer Plaintiffs effectively mooted the Parties' underlying dispute, such that any appeal would be advisory in nature and thus a waste of the Court's and the Parties' time and resources. Because vacatur in such circumstances would be "consonant with equity," *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 2481782, at *5 n.14 (N.D. Cal. June 8, 2017) (vacating order on such grounds), this Court should exercise its "wide latitude" under Rule 54(b) to vacate its Discovery Order in full, *Midmountain Contractors, Inc. v. Am. Safety Indem. Co.*, 2013 WL 5492952, at *4 (W.D. Wash. Oct. 1, 2013), or in the alternative strike those portions of its ruling related to the First Amendment defense.

   A.   **Relevant Background**

On August 19, 2021, this Court issued a discovery order denying Apple's motion to compel developer Match Group, Inc. ("Match") to produce certain documents that are responsive to three of Apple's requests for production. Dkt. 36 ("Discovery Order"). The three relevant requests related exclusively to communications between Match and Developer Plaintiffs, other developers, and the Coalition for App Fairness, a group that includes a number of developers including Match and Epic Games. *See* Dkt. 3 at 35–36 (RFP Nos. 29, 30, and 32). None of the relevant requests involved communications with consumers. Contrary to Match's claim, Apple is not arguing that developers are irrelevant to the consumer class action but rather that the developer communications sought by the requests at issue are not relevant to the remaining consumer case. Accordingly, the putative settlement with Developer Plaintiffs does moot the issues in the motion to compel.

In its ruling, the Court found each of these developer-related RFPs not to seek relevant and proportional discovery, and thus denied Apple's motion on those grounds. *See id.* at 3–10. The Court then explained that "*[b]ecause Apple can appeal this order*, the Court should also address Match's argument that Apple's RFPs are barred by the First Amendment privilege." *Id.* at 10 (emphasis added). Then, despite "agree[ing] with Apple that [Match's First Amendment] privilege was not timely asserted under Rule 45," *id.* at 10–11, the Court concluded that no waiver had occurred, *id.* at 10–12, and that the First Amendment provided independent grounds for denial of Apple's motion, *id.* at 12–15. The Court stressed that "*even aside from the First Amendment privilege, the Court would deny Apple's motion to compel* because the information sought is not relevant and proportional to the needs of the underlying cases." *Id.* at 14 (emphasis added).

Just one week later, on August 26, 2021, the Developer Plaintiffs "report[ed] [to the Court] their proposed Settlement with Apple," which, if approved, "would resolve the claims of a Settlement Class consisting of approximately 67,000 iOS developers"—*i.e.*, "[n]early all domestic iOS developers with paid app transactions." ECF No. 396 at 1, Case No. 4:19-cv-03074-YGR (Developer Class Action). This proposed settlement effectively mooted any potential appeal of this Court's August 19, 2021 Discovery Order, which remains the lone substantive order on the docket for this miscellaneous action.

   B.   **The Court Should Vacate Its Discovery Order Under Rule 54(b)**

Under Federal Rule of Civil Procedure 54(b), "any order . . . adjudicat[ing] fewer than all

1

the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment." This rule affords district courts "'complete power' over non-final orders"—*i.e.*, courts "may *vacate* or revise them 'at any time,' if doing so would be 'consonant with equity.'" *CRT Antitrust Litig.*, 2017 WL 2481782, at *5 n.14 (emphasis added) (quoting *U.S. Gypsum Co. v. Pac. Award Metals, Inc.*, 2006 WL 1825705, at *1 (N.D. Cal. July 3, 2006)); *see also John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 91 (1922) (interlocutory orders may be revised when it is "consonant with equity" to do so).

The Court should vacate the Discovery Order here under Rule 54(b), or in the alternative strike those portions related to Match's First Amendment defense (*see* Discovery Order at 10:14–15:01), because doing so would be "consonant with equity" for several reasons that courts consider in like circumstances.[1]  *U.S. Gypsum Co.*, 2006 WL 1825705, at *1.

*First*, although Apple disagrees with the Court's discovery ruling, the proposed settlement in the Developer Class Action effectively mooted this dispute and means that Apple will not file an appeal of the ruling. Specifically, the proposed settlement means "there is no need for [the] relief" that Apple sought in its motion to compel, *CRT Antitrust Litig.*, 2017 WL 2481782, at *5 n.14 (noting this reality supports vacatur under Rule 54(b)), such that any appeal would effectively have sought an advisory opinion and thereby wasted valuable and limited judicial time and resources. What's more, the Court only reached Match's constitutional defense—the weightiest portion of the Court's analysis—"*[b]ecause Apple can appeal th[e] order*." Discovery Order at 10 (emphasis added). The possibility of such an appeal has effectively been mooted by the Developer Plaintiffs' settlement. Given that judicial policy generally favors such settlements, *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007), it would be especially inequitable to allow the Discovery Order (and its constitutional ruling in particular) to go unchallenged merely because the Developer Plaintiffs and Apple reached a settlement agreement mere days after the Order was decided.[2]

---

[1] That motions to vacate have typically arisen in the context of joint or unopposed motions, as Match notes, comes as no surprise because most orders in a case—and therefore most orders sought to be vacated—involve only the settling parties. But nothing in these Rule 54(b) cases suggests that the animating principles are limited to this posture and, indeed, they apply with equal force here. In any event, Match's authorities are inapposite. The four-factor test Match invokes derives from the Eastern District of Texas and is generally applied "[i]n the specific context of claim construction orders," as noted by Match's own authorities. *See Automated Packaging Sys., Inc. v. Free Flow Packaging Int'l, Inc.*, 2018 WL 6251051, at *1 (N.D. Cal. Nov. 29, 2018); *Cisco Sys., Inc. v. Capella Photonics, Inc.*, 2021 WL 3373292, at *1 (N.D. Cal. Aug. 3, 2021). And Match's other cases sought vacatur of far more consequential orders than the single, interlocutory discovery order here. *See, e.g., Chartis Specialty Ins. Co. v. Queen Anne HS, LLC*, 2012 WL 3780345, at *3 (W.D. Wash. Aug. 31, 2012) (denying vacatur of summary judgment order where "[f]ew cases on the court's docket ha[d] demanded more attention than this one"); *Conway v. Northfield Ins. Co.*, 2019 WL 8263435, at *1 (N.D. Cal. Aug. 12, 2019) (similarly expressing "concerns over vacating a summary judgment order"); *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994) (discussing "vacatur of a *judgment* under [appellate] review") (emphasis added).

[2] This inequity is all the more apparent given findings (that Match ignores) in Judge Gonzalez Rogers' *Epic Games* Rule 52 Order after Trial on the Merits that cast doubt on the public-policy bona fides of the Coalition for App Fairness. *See, e.g.*, ECF No. 812 at 22–23, Case No. 4:20-cv-05640-YGR ("Epic

*Second*, the fact that "the Court would deny Apple's motion to compel" "*even aside from the First Amendment privilege*" (Discover Order at 14 (emphasis added)) further highlights why vacating such a constitutional ruling would be "consonant with equity." *John Simmons Co.*, 258 U.S. at 91. "Whenever possible, a court should avoid passing on constitutional questions if there are other grounds upon which a case may be disposed." *Travieso v. Glock Inc.*, —F. Supp. 3d—, 2021 WL 913746, at *4 (D. Ariz. Mar. 10, 2021) (collecting cases). That is plainly the case here, as the Court itself noted.

*Third*, vacatur is further warranted given the unique, "all-or-nothing" manner in which "the parties briefed th[e] dispute." Discovery Order at 10. Indeed, the Court emphasized that it had "rule[d] on the dispute as it ha[d] been presented" rather than "make [Apple's RFPs] narrower" or otherwise "try on its own to come up with a compromise that neither side suggested," *id.*, thus leaving open the question whether narrower RFPs would present the same concerns.[3]

In light of the foregoing, Apple respectfully requests that the Court's Discovery Order be "vacated and [thus be] without any present or future force or effect." *CRT Antitrust Litig.*, 2017 WL 2481782, at *5 & n.14 (finding vacatur "consonant with equity" following settlement); *U.S. Gypsum Co.*, 2006 WL 1825705, at *1 (similar). In the alternative, Apple respectfully requests that the Court strike those portions of its ruling related to Match's First Amendment defense (Discovery Order at 10:14–15:01). *See*, *e.g.*, *Midmountain Contractors*, 2013 WL 5492952, at *5 (striking portions of interlocutory order following settlement).

---

Games hired a consultant to 'help to establish a reason for [the Coalition] to exist (either organic or manufactured),'" and "then concealed the Coalition's existence until after [Epic's] hotfix was triggered on August 13, 2020." (citation omitted)).

[3] Match's suggestion that Apple's request "suspicious[ly]" comes shortly before "Google served subpoenas on both the Coalition and Match" (*infra*) is baseless speculation. In any event, even if the First Amendment issues at hand may recur, such weighty issues should be considered in a context that allows legal arguments on both sides to be *fully* considered—including on appeal—rather than on the posture presented here.

## II.     Match's Position:

Apple chose to initiate this action and requested this Court's review of Match's objections, including the First Amendment privilege. Apple then lost. Unhappy with that result, Apple now asks this Court to vacate its decision, leaning on the "judicial policy generally favor[ing] . . . settlements." Apple's primary argument is that its settlement of the *Cameron* class action prevented it from appealing. As explained below, Apple was not prevented from doing anything. But even if it had been, Apple's decision to settle with the plaintiffs in *Cameron* is no reason to deprive Match or the public of this Court's ruling. The Court should reject Apple's request.

Critically, every case that Apple cites as "vacating" a prior order did so on a stipulated motion that both sides supported.[4] *Cf. Denegal v. Farrell*, 2019 WL 626840 (E.D. Cal. Feb. 14, 2019) (denying contested motion to vacate). Under those circumstances—i.e., when parties settle a case then *jointly* seek to vacate an interlocutory decision—Ninth Circuit district courts determine whether vacatur would be "consonant with equity" by evaluating four factors: "(1) the public interest in the orderly operation of the federal judicial system; (2) the parties' desire to avoid any potential preclusive effect; (3) the court's resources that will be expended if the case continues; and (4) the parties' interest in conserving their resources." *Cisco Sys., Inc. v. Capella Photonics, Inc.*, 2021 WL 3373292, at *1 (N.D. Cal. Aug. 3, 2021) (citation omitted).

The facts here are entirely different: (1) this is not a joint motion—it is contested; (2) Apple and *Match* have not settled; and (3) Apple has not promised that it will not seek similar discovery in the future. It thus makes little sense to evaluate whether vacatur would be "consonant with equity" based on how much of the "court's resources . . . will be expended if the case continues" or the "parties' interest in conserving their resources" through settlement. *Cisco*, 2021 WL 3373292, at *1. Moreover, Apple's settlement with the *Cameron* plaintiffs is not "expressly conditioned upon the court's granting this motion to vacate." *Id.* at *3 (denying vacatur). Denying vacatur "will not discourage settlement" because the *Cameron* settlement "does not depend on the fate of the [August 19] order." *Chartis Specialty Ins. Co. v. Queen Anne HS, LLC*, 2012 WL 3780345, at *4 (W.D. Wa. Aug. 31, 2012) (denying vacatur).

In short, the "judicial policy favoring settlements" does not apply here, and thus all of the cases Apple cites supporting vacatur are distinguishable. Apple now claims that this four-factor test is "inapposite" because it arose in the context of "claim construction orders"—but it is Apple that invoked the "consonant with equity" standard in the first place without offering any explanation of how courts apply it.  The point is that equity favors vacatur in support of settlement only when the parties jointly seek vacatur (typically as a condition of settlement), and Apple's attempt to lasso the "consonant with equity" standard ignores that context.  But even setting that aside, Apple's three equitable arguments fail on their own terms.

---

[4] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 2481782, at *5 n.14 (N.D. Cal. June 8, 2017) (vacating order on "the parties['] request"); *Midmountain Contractors, Inc. v. Am. Safety Indem. Co.*, 2013 WL 5492952, at *1 (W.D. Wash. Oct. 1, 2013) ("unopposed"); *U.S. Gypsum Co. v. Pac. Award Metals, Inc.*, 2006 WL 1825705, at *1 (N.D. Cal. July 3, 2006) ("joint motion").

*First*, Apple argues that vacatur is equitable because the *Cameron* settlement "mooted this dispute." But Apple chose to settle *Cameron*—and, in any event, the *Cameron* settlement did not preclude an appeal. Apple's motion to compel expressly relied on both the *Cameron* developer class action and the parallel consumer class action, *In re Apple iPhone* (Dkt. No. 1-1 at 5 (arguing that Apple's requests were "highly relevant to two ongoing antitrust class action cases").)  Apple now changes course, contending that "[n]one of the relevant requests involved communications with *consumers*"—but Apple has frequently pointed to developer conduct to defend against the consumer lawsuit. *See, e.g., In re Apple iPhone.*, No. 4:11-cv-06714, Dkt. No. 478, at 25 (Apple opposition to consumer plaintiffs' motion for class certification, arguing that determining whether "developer[s] would have passed on alleged [cost] savings" would "require resolving complex individualized issues at the developer level").  No doubt Apple's rationales for seeking discovery were *weakened* by the *Cameron* settlement.[5] But weakened showing or not, Apple chose not to appeal; it was not precluded from doing so.[6]

In any event, Apple's argument rests on a flawed premise. When "mootness results from settlement," the "losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). Equity does not sanction allowing Apple to have its cake and eat it too.

*Second*, Apple argues that courts should "avoid passing on constitutional questions," and requests vacatur because the Court would have denied Apple's motion to compel even without reaching the First Amendment issue.  But there was nothing improper about the Court reaching both issues at the time the Court ruled, and Apple's choice not to appeal does not retroactively implicate the canon of constitutional avoidance; the Court could not have predicted Apple would opt not to appeal.  To hold otherwise would be to incentivize parties to decline to pursue appeals whenever a court rendered a strategically unfavorable alternative ruling. But "a dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal." *Allard v. DeLorean*, 884 F.2d 464, 467 (9th Cir. 1989).

As an alternative to full vacatur, Apple proffers that the Court should instead only "strike those portions of its ruling related to the First Amendment defense." But as courts in this district have recognized, "a court should not chisel out parts of the public record and the body of law merely because an unsatisfied party wants to destroy the remains of its loss." *Automated Packaging Sys., Inc. v. Free Flow Packaging Int'l, Inc.*, 2018 WL 6251051, at *2 (N.D. Cal. Nov. 29, 2018) (citation omitted) (denying vacatur).

---

[5] Match does not concede that any of Apple's relevance arguments meet the necessary threshold under Rules 26 and 45 whether as to *Cameron* or *In re Apple iPhone*. As the Court recognized, each of those arguments ultimately failed to demonstrate relevance and proportionality.

[6] Inexplicably, Apple accuses Match of "ignor[ing]" "Judge Gonzalez Rogers'" "findings" that "cast doubt on the public policy bona fides of the Coalition for App Fairness." But it is Apple that fails to explain why the Coalition's bona fides are relevant to this motion to vacate, even if Apple had accurately characterized Judge Gonzalez Rogers' findings (and it has not).

***Third***, Apple argues that the "unique, 'all-or-nothing' manner in which" the parties briefed Apple's motion to compel supports vacatur, suggesting that vacatur would have limited effect outside this case. *Cf. CRT Antitrust Litig.*, 2017 WL 2481782, at *5 n.14. Not so. As this Court is aware, Apple served similar subpoenas on the Coalition for App Fairness ("Coalition") and Basecamp, which Apple voluntarily withdrew after the Court's Order. Even setting aside the possibility of preclusion, *see, e.g.*, *Nat'l Union Fire Ins. Co. v. Seafirst Corp.*, 891 F.2d 762, 769 (9th Cir. 1989) (a party "should not be able to avoid [preclusive] effects through settlement and dismissal of the appeal"), the Order had direct impact outside this case.

The timing of Apple's request itself is suspicious and suggests that these issues will recur soon. The same week that Apple contacted Match about its vacatur request, Google served subpoenas on both the Coalition and Match seeking the same documents Apple sought here, nearly word-for-word. Apple claims that it is "baseless speculation" that this motion to vacate has anything to do with Google's subpoenas. But given the verdict in *Epic v. Apple*, the *Cameron* settlement, and the apparently-now-irrelevant consumer class action, Apple's request for vacatur would largely benefit Google—and Apple, if Google were to succeed at obtaining Match's privileged documents where Apple failed. The Court's Order provides helpful guidance on the relevance and First Amendment issues at issue in such subpoenas, which "infringe[d] [Match's] First amendment rights" (and, by extension, those of the Coalition and its members) by seeking "internal communications about strategy, lobbying, planning, and so on." (Order at 13.) Match and the Coalition will be prejudiced by its vacatur.

That leads into a larger problem: Apple provides no compelling reason to overcome the strong public interest against vacatur. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp*, 513 U.S. at 26. As Judge Gonzalez Rogers recently recognized, even the "judicial policy generally favor[ing] settlement . . . is outweighed by the Court's concerns over vacating a summary judgment order that addressed developing areas of law and may be useful to the public." *Conway v. Northfield Ins. Co.*, 2019 WL 8263435, at *1 (N.D. Cal. Aug. 12, 2019). The Court's Order is precisely the type of "order that addressed developing areas of law" and that already *is* "useful to the public"—most notably to Match, Basecamp, and the Coalition, but also to other parties and courts. The Court spent significant time over a shortened schedule reaching a thorough decision. The public interest favors letting it stand.

6

## E-FILING ATTESTATION

I, Jay P. Srinivasan, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

/s/ Jay P. Srinivasan
Jay P. Srinivasan
