UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC,<br><br>   Movant,<br><br>v.<br><br>MATCH GROUP INC.,<br><br>   Respondent. | Case No. 21-mc-80184-YGR (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 37 |

Apple moves pursuant to Federal Rule of Civil Procedure 54(b) to vacate or revise the Court's August 19, 2021 Discovery Order (ECF No. 36) denying Apple's motion to compel in this miscellaneous action. For the reasons explained below, the Court denies the motion.

## I.   BACKGROUND

Some procedural background is necessary to understand the present motion. In this miscellaneous action transferred from the Northern District of Texas, Apple moved to compel documents from Match Group that were responsive to Apple's requests for production ("RFPs") 29, 30 and 32. The RFPs were part of a subpoena Apple served on non-party Match in three underlying actions pending in this district: *Epic Games, Inc. v. Apple Inc.*, 20-cv-5640; *Cameron, et al. v. Apple Inc.*, 19-cv-3074; and *In re Apple iPhone Antitrust Litigation*, 11-cv-6714. *Epic* is a single plaintiff case. *Cameron* is a proposed class of app developers. *In re Apple iPhone* is a proposed class of consumers. Apple served a similar subpoena in all three actions on Basecamp (21-mc-80187, transferred from the Northern District of Illinois), and similar subpoenas in the two class actions on the Coalition for App Fairness, its executive director, and its public affairs firm (21-mc-80194, transferred from the District for the District of Columbia). Match and Basecamp are app developers and members of the Coalition.

1    The three underlying lawsuits are all antitrust cases against Apple, alleging that Apple monopolizes the iOS app distribution market and uses that monopoly power to charge supracompetitive commissions to app developers for paid apps and on in-app purchases. By the time the Court considered Apple's motion to compel against Match, the *Epic* trial was over, so the Court considered whether the requested discovery was relevant and proportional to the needs of the two class actions. In section B of the August 19 Order, the Court concluded that the requested discovery was not relevant and proportional or was otherwise improper. Because Apple had the right to appeal the Court's order, in section C the Court went on to consider Match's alternative argument that Apple's requested discovery was barred by the First Amendment privilege, and the Court concluded that it largely was.

On August 23, 2021 the Court issued orders in the *Basecamp* and *Coalition* cases directing the parties to review the August 19 Order in this action and to file a status report concerning those discovery disputes. In both of those actions, Apple withdrew the subpoenas in light of the settlement of the *Cameron* action and the related motion for preliminary approval. In this action, no party filed anything after the August 19 Discovery Order until the parties filed the current letter brief concerning Apple's motion for vacatur on October 29, 2021. ECF No. 37. In the motion, Apple argues that the settlement of the developer class action shortly after the August 19 Order was issued moots the underlying legal dispute and asks the Court to vacate the August 19 Order on that ground. Match opposes.

## II.   ANALYSIS

"Under Rule 54(b), district courts have 'complete power' over non-final orders and may vacate or revise them 'at any time,' if doing so would be 'consonant with equity.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 2481782, *5 n.14 (N.D. Cal. June 8, 2017). "Courts exercising Rule 54(b) power in the settlement context have found that vacating a non-final order is consonant with equity if there are no reasons suggesting the order should not be vacated." *Id*. (citations and quotation marks omitted).

The Court denies Apple's motion. First, Apple is exaggerating when it says that the settlement of the developer class action mooted the underlying dispute, such that any appeal of the

2

1  August 19 Order would have been advisory in nature and a waste of the Court's and the parties'
2  time and resources.  Apple served the subpoena on Match (and the subpoenas on Basecamp and
3  the Coalition) in *both* of the class actions, not just in the developer case, and Apple has long been
4  of the view that the heterogeneity of app developers is relevant to class certification and the merits
5  in the consumer class action.  For example, in opposing the consumer plaintiffs' motion for class
6  certification, Apple argued that the proposed class lacks commonality because there is not a single
7  market consisting of all sales of iOS apps and in-app purchases, but that in reality Apple competes
8  in multiple relevant markets that have different developers.  11-6714 ECF No. 478, pages 13-14 of
9  33.  Apple argued that game-app transactions are not reasonably interchangeable with dating-app
10 or business-app transactions.  *Id*. at page 14 of 33.  In arguing that common issues do not
11 predominate, Apple contended that the plaintiffs' expert relied on an "unrepresentative" sample of
12 apps in estimating app and in-app purchase prices in the but-for world.  *Id*. at pages 25-26 of 33.
13 Apple also argued that for certain "categories of apps," app prices would not be lower in the but-
14 for world.  *Id*. at pages 26-27 of 33.  Apple further argued that if $0.99 pricing tiers remained in
15 the but-for world, most app developers would not change their prices.  *Id*. at page 28 of 33.  Apple
16 also argued that class certification failed the superiority requirement because of the need to
17 determine, for each app a consumer used, whether the developer would have passed on the alleged
18 savings, and if so, to what extent in the but-for world.  *Id*. at page 32 of 33.  Thus, Apple regards
19 differences between app developers as important for the consumer case.
20      In moving to compel against Match, Apple argued that "the requested evidence is . . .
21 highly relevant to the pending motion for class certification, including whether there are
22 individualized differences among developers that defeat predominance and issues concerning
23 injury."  ECF No. 1-1 at 5.  While that specific sentence was a reference to the motion for class
24 certification in the developer action, as explained above, Apple is still relying on individualized
25 differences among developers to argue against predominance and a showing of classwide injury in
26 the consumer case, which has not settled.  Apple's own description of what the requested
27 discovery would have shown demonstrates that the requested discovery remains relevant to the
28 consumer case.

More broadly, Apple itself argued in its motion to compel that it was seeking discovery relevant to both the developer and consumer class actions. Apple began the motion by explaining that "On December 9, 2020, Apple served Match with a Rule 45 subpoena (the 'Subpoena') seeking documents *highly relevant* to *two* ongoing antitrust class action cases brought against Apple in the Northern District of California . . . . These *two* class actions, one brought by a putative class of app developers *and the other by a putative class of app consumers*, essentially assert the same claims against Apple as asserted in a related, third antitrust action, filed in August 2020 by Epic Games, Inc. ('Epic'), the developer of the popular *Fortnite* video game, and which recently concluded in a three-week bench trial on May 24, 2021." *Id*. at 1 (emphasis added); *see also id*. at 5 ("communications between and among app developers about the policies being challenged by a putative class representative *are relevant* to the merits of the class *actions*" – plural – "and Apple's defenses.") (emphasis added). Indeed, it's worth remembering that one subpart of Apple's RFPs to Match was specifically about the consumer class action and couldn't possibly be mooted by a settlement of the developer case. *See* ECF No. 36 at 2-3 (RFP 32 requested, in part, "all communications between you and any app developer, including Epic, or any member of the Coalition, concerning . . . the following ongoing litigation, including declarations, anticipated oral testimony, or documentary evidence relating to the same . . . *In re Apple iPhone Antitrust Litigation*, Case No 4:11-cv-06714-YGR (N.D. Cal.) . . .").

The Court is willing to believe that the settlement of the developer case reduced Apple's desire for the requested discovery from Match, Basecamp and the Coalition. But it did not reduce it to zero because the consumer case did not settle. Apple cites cases in which courts vacated interlocutory orders because a settlement mooted the parties' underlying legal dispute. *See In re Cathode Ray Tube (CRT) Antitrust Litig*., 2017 WL 2481782 (granting final approval to a settlement and vacating a special master's report and recommendation); *Midmountain Contractors, Inc. v. Am. Safety Indem. Co.*, 2013 WL 5492952 (W.D. Wash. Oct. 1, 2013) (settlement agreement allowed party to move to vacate part of a summary judgment order, which was a factor in getting the parties to settle); *U.S. Gypsum Co. v. Pacific Award Metals, Inc.*, 2006 WL 1825705 (N.D. Cal. July 3, 2006) (pursuant to the terms of the settlement agreement, the

4

parties jointly asked the court to vacate its rulings on claim construction and summary judgment). However, Apple has not cited any cases in which a settlement of one of two cases that reduced the importance of the requested relief, but did not entirely moot it, led a court to vacate an interlocutory ruling. This alone warrants denying Apple's motion. Apple could have appealed the August 19 order, citing the continued pendency of the consumer case, and the settlement of the developer action would not have been an impediment to that.

Apple cites the judicial policy favoring settlement but does not contend that the *Cameron* settlement hinges on the fate of the August 19 Order, leaving the Court to wonder what settlement would be encouraged by a vacatur of the order. The Court is concerned that a loose policy of granting vacatur requests would discourage settlement by signaling to litigants that if they fight hard and lose, they can retroactively wipe away the adverse decisions. *See Chartis Specialty Ins. Co. v. Queen Anne HS, LLC*, 2012 WL 3780345, *4 (W.D. Wash. Aug. 31, 2012) ("[T]he court's declining to vacate the April 4 order will not discourage settlement. It will not discourage settlement in this case because the parties have already executed a settlement that does not depend on the fate of the April 4 order. As to other litigants . . . a liberal policy of vacatur does not favor settlement. It instead encourages parties with deep pockets to litigate with impunity, knowing that they can eliminate adverse decisions with a settlement and a motion to vacate.").

There is also a practical reason not to vacate the August 19 Order. It doesn't require anyone to do anything. The order stopped Apple's subpoena dead in its tracks. If the Court had *granted* Apple's motion to compel, and if Match were busy collecting and Bates-stamping documents to produce, then if there were a settlement that mooted the need for this discovery, it would be appropriate to relieve Match from ongoing, pointless work. But we do not have a situation like that here.

Apple argues that if the Court is unwilling to vacate the whole order, it should at least vacate the First Amendment holding, since the Court included that for the sake of completeness due to Apple's ability to appeal. Apple invokes the doctrine of constitutional avoidance. However, that argument is unpersuasive. At the time the Court issued the August 19 Order, the First Amendment issue was ripe, it was a major dispute between the parties, and it was fully

5

briefed. The Court has already decided the constitutional issue, and the decision is available to the world on Westlaw, *see Apple Inc. v. Match Group, Inc.*, 2021 WL 3727067 (N.D. Cal. Aug. 19, 2021), so there is nothing further to "avoid."

Finally, there are two important reasons not to vacate the order. The first is that doing so would be unfair to Match, Basecamp and the Coalition. Apple denigrated the associational rights of the Coalition and its members, and they obtained a judicial decision recognizing their First Amendment rights in their media and political campaign against Apple's policies. If *they* had settled with Apple to forestall an appeal of that order, then equity might favor vacatur. But Apple's settlement with other people over whom Match, Basecamp and the Coalition have no control is no basis to claw back the judicial victory they achieved. And, yes, all three of them achieved it. While the order was issued in the *Match* case, the Court was aware of the nearly identical briefing in the *Basecamp* and *Coalition* cases also pending before it and understood that the *Match* order would resolve them too.

And Match says that its desire to rely on the August 19 Order is not at all hypothetical. Match states that in the same week that Apple contacted Match about its vacatur request, Google served subpoenas on both the Coalition and Match seeking the same documents Apple sought here, nearly word-for-word. Apple derides the timing as "baseless speculation," but that argument misses the point that Match, Basecamp and the Coalition litigated against Apple and obtained a judicial decision recognizing their First Amendment associational rights in the Coalition's activities. It was a considered decision issued by a federal court after thorough briefing, and the prevailing parties should be able to make use of it in later litigation.

And second, there is the public interest. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 26 (1994) (citation and quotation marks omitted). This Court's order should stand. The application of the First Amendment privilege recognized in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), to associational rights that are both commercial and political in nature is a developing area of the

law, and the Court's decision "may be useful to the public." *Conway v. Northfield Ins. Co.*, 2019 WL 8263435, *1 (N.D. Cal. Aug. 12, 2019).

Accordingly, Apple's motion to vacate or revise the August 19, 2021 Discovery Order is denied.

**IT IS SO ORDERED.**

Dated: November 8, 2021

THOMAS S. HIXSON
United States Magistrate Judge